**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

LARRY C. GOODMAN,

       Petitioner,

v.                                                                    Case No. 3:23-cv-614-TJC-SJH

SECRETARY, FLORIDA DEPARTMENT
OF CORRECTIONS,

       Respondent.

---

## <u>ORDER</u>

### I.    <u>Status</u>

Petitioner Larry C. Goodman, an inmate of the Florida penal system, initiated this action by filing a pro se Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus. Doc. 1. Petitioner challenges a state court (Duval County, Florida) judgment of conviction for possession of a firearm by a felon, attempted armed robbery, aggravated assault, driving with an expired license, and leaving the scene of an accident. Petitioner is serving a fifteen-year prison sentence. Respondent filed a Response with exhibits. Doc. 8.[1] Petitioner filed a Reply. Doc.

---

[1] The Court will cite exhibits by document and page number as assigned by the Court's electronic case management system.

11. This case is ripe for review.[2]

## II.     Governing Legal Principles

### A. Standard Under § 2254

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal habeas corpus petition. Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016) (explaining AEDPA deference), abrogation in part on other grounds recognized by Smith v. Comm'r, Ala. Dep't of Corr., 67 F.4th 1335, 1348 (11th Cir. 2023). "The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction." Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the petitioner's claims on the merits. Marshall v. Sec'y Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court

---

[2] "In a habeas corpus proceeding, the burden is on the petitioner to establish the need for an evidentiary hearing." Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318 (11th Cir. 2016) (citing Chavez v. Sec'y Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011)). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007) (citation omitted). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Id. The Court finds that "further factual development" is unnecessary. Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003). Thus, an evidentiary hearing will not be conducted.

need not issue an opinion explaining its rationale for the state court's decision to qualify as an adjudication on the merits. Harrington v. Richter, 562 U.S. 86, 100 (2011). When the state court's adjudication on the merits is unaccompanied by an explanation,

> the federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning. But the State may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed.

Wilson v. Sellers, 584 U.S. 122, 125-26 (2018).

When a state court has adjudicated a petitioner's claims on the merits, a federal court cannot grant habeas relief unless the state court's adjudication of the claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2). A state court's factual findings are "presumed to be correct" unless rebutted "by clear and convincing evidence." Id. § 2254(e)(1).

> AEDPA "imposes a highly deferential standard for evaluating state court rulings" and "demands that

3

state-court decisions be given the benefit of the doubt." <u>Renico v. Lett</u>, 559 U.S. 766, 773 (2010) (internal quotation marks omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." <u>Harrington v. Richter</u>, 562 U.S. 86, 101 (2011) (internal quotation marks omitted). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." <u>Id.</u> (citing <u>Lockyer v. Andrade</u>, 538 U.S. 63, 75 (2003)). The Supreme Court has repeatedly instructed lower federal courts that an unreasonable application of law requires more than mere error or even clear error. <u>See, e.g.</u>, <u>Mitchell v. Esparza</u>, 540 U.S. 12, 18 (2003); <u>Lockyer</u>, 538 U.S. at 75 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."); <u>Williams v. Taylor</u>, 529 U.S. 362, 410 (2000) ("[A]n <u>unreasonable</u> application of federal law is different from an <u>incorrect</u> application of federal law.").

<u>Bishop v. Warden, GDCP</u>, 726 F.3d 1243, 1253-54 (11th Cir. 2013) (parallel citations omitted).

### B. Ineffective Assistance of Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5 (2003) (per curiam) (citing <u>Wiggins v. Smith</u>, 539 U.S. 510, 521 (2003); <u>Strickland v. Washington</u>,

4

466 U.S. 668, 687 (1984)). To establish ineffective assistance, a person must show that: (1) counsel's performance was outside the wide range of reasonable, professional assistance; and (2) counsel's deficient performance prejudiced the challenger in that there is a reasonable probability that the outcome of the proceeding would have been different absent counsel's deficient performance. Strickland, 466 U.S. at 687.

The two-part Strickland test applies to challenges to the validity of guilty pleas based on ineffective assistance of counsel. Hill v. Lockhart, 474 U.S. 52, 58 (1985). The petitioner must still show that counsel's performance was deficient. See id. at 56-59; Lynch v. Sec'y Fla. Dept. of Corr., 776 F.3d 1209, 1218 (11th Cir. 2015). To establish prejudice, however, the petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59 (footnote omitted); Lynch, 776 F.3d at 1218.

There is no "iron-clad rule requiring a court to tackle one prong of the Strickland test before the other." Ward v. Hall, 592 F.3d 1144, 1163 (11th Cir. 2010). Since both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in Strickland, "If it is easier to dispose of an ineffectiveness claim on the ground of

5

lack of sufficient prejudice, which we expect will often be so, that course should be followed." 466 U.S. at 697.

Further, "[t]he question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable—a substantially higher threshold." Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (internal quotation marks omitted). If there is "any reasonable argument that counsel satisfied Strickland's deferential standard," then a federal court may not disturb a state-court decision denying the claim. Richter, 562 U.S. at 105. Thus, "[s]urmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010). "Reviewing courts apply a 'strong presumption' that counsel's representation was 'within the wide range of reasonable professional assistance.'" Daniel v. Comm'r, Ala. Dep't of Corr., 822 F.3d 1248, 1262 (11th Cir. 2016) (quoting Strickland, 466 U.S. at 689). "When this presumption is combined with § 2254(d), the result is double deference to the state court ruling on counsel's performance." Id. (citing Richter, 562 U.S. at 105).

### III.   Factual Background and Procedural History

Around 3:00 p.m. on April 5, 2015, Petitioner rear-ended a vehicle at a red light in Jacksonville, Florida. Doc. 8-1 at 18. Petitioner tried to flee, but one of the occupants of the vehicle got out and "blocked" Petitioner's car. Id. Petitioner brandished a handgun and said, "I got a kilo of cocaine. I got to get

6

out of here. I don't need no police." Id. He then drove away. Id.

Approximately thirty minutes later, Petitioner accosted a bus driver outside a gas station store. Doc. 8-2 at 18. Petitioner asked for $5, but the driver said he "did not have any money on him." Id. In response, Petitioner pointed a gun at the driver and said, "You know what I can do with this. I can take this store if I wanted." Id. The driver said he would use the ATM inside the store to "get [Petitioner] some cash." Id. The driver entered the store and told the clerk to "lock the front doors . . . and call the police." Id. Petitioner drove away before officers arrived. Id.

A "be on the lookout" was issued for Petitioner and his vehicle. Doc. 8-1 at 19; Doc. 8-2 at 18. Soon after, law enforcement found Petitioner "standing in front of [his] vehicle with the hood raised." Doc. 8-2 at 18. A "silver and black handgun" was "in plain view" on the front passenger seat. Id. Petitioner was arrested without incident. Id. The victims of the hit and run and the attempted robbery were taken to the scene of the arrest. Doc. 8-1 at 19; Doc. 8-2 at 18. Each identified Petitioner as the culprit. Id. Law enforcement discovered that Petitioner was a convicted felon whose driver's license had expired in December 2002. Doc. 8-1 at 19.

For the hit and run, Petitioner was charged with possession of a firearm by a felon, aggravated assault, driving with an expired license, and leaving the scene of an accident. Id. at 25. For the attempted robbery, he was charged with

7

possession of a firearm by a felon and attempted armed robbery. Doc. 8-2 at 25. The prosecution filed a notice of intent to classify Petitioner as a habitual felony offender (HFO). Doc. 8-1 at 57; Doc. 8-2 at 62. Because he qualified as an HFO, Petitioner faced a maximum sentence of (1) thirty years' imprisonment for possession of a firearm by a felon and (2) thirty years' imprisonment for attempted armed robbery. Id.; see also Munden v. State, 426 So. 3d 498, 501 (Fla. 4th DCA 2025); Betty v. State, 7 So. 3d 586, 587 (Fla. 4th DCA 2009).

Petitioner ultimately pleaded guilty to each offense, stipulating that he qualified as an HFO. Doc. 8-1 at 44-45; Doc. 8-2 at 41-42, 151. In exchange, he received a total sentence of fifteen years' imprisonment. Doc. 8-1 at 59; Doc. 8-2 at 64. Petitioner was forty-two years old at the time of sentencing. Doc. 8-1 at 16, 59; Doc. 8-2 at 64.

Petitioner appealed, and the First District Court of Appeal (First DCA) affirmed his convictions. Doc. 8-10. Petitioner then filed a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850. Doc. 8-12 at 22. Following an evidentiary hearing, the postconviction court denied relief. Id. at 130-43. The First DCA affirmed in an unexplained decision. Doc. 8-15. This federal habeas petition followed. Doc. 1.

## IV.    <u>Analysis</u>

Petitioner raises two grounds of ineffective assistance of trial counsel. <u>Id.</u> at 5-7.

### A. Ground One

Petitioner argues that trial counsel was deficient for stipulating that he qualified as an HFO. Doc. 1 at 5. The "HFO provision allows courts to sentence a defendant who qualifies as an HFO to an extended term of imprisonment." <u>Foulks v. State</u>, 306 So. 3d 1178, 1185-86 (Fla. 3d DCA 2020). A defendant qualifies as an HFO if (1) he has been convicted of two or more felonies and (2) he committed the present offense within five years of the date of conviction of the last felony. Fla. Stat. § 775.084(1)(a). Here, the prosecution relied on two prior convictions for HFO sentencing: an April 2000 Florida conviction for sale of cocaine, and a September 2010 North Carolina conviction for felony larceny. Doc. 8-1 at 57; Doc. 8-2 at 62. As part of the guilty plea, Petitioner and his counsel stipulated that Petitioner qualified as an HFO. Doc. 8-1 at 44, 151; Doc. 8-2 at 41. The trial court determined that Petitioner met "the criteria to be classified as an" HFO and sentenced him to a total of fifteen years' imprisonment. Doc. 8-1 at 152, 160-61.

According to Petitioner, counsel should not have stipulated to HFO sentencing because the felony larceny conviction "wasn't his." Doc. 1 at 5. The postconviction court held an evidentiary hearing on this claim. Before the guilty

plea, counsel asked a colleague at the Public Defender's Office—Tricia Rover—to visit Petitioner at the county jail and discuss the matter of HFO sentencing. Doc. 8-12 at 223-24. Rover testified that she showed Petitioner the judgments for the sale-of-cocaine and felony-larceny convictions. Id. at 224. According to Rover, Petitioner confirmed that he "remembered" both convictions. Id. With respect to the North Carolina conviction, Rover explained: "The judgment and sentence that [he] and I reviewed is a felony larceny from the State of North Carolina. I asked [him] if [he] remembered it. [He] said, yes. I asked if it was [him] and [he] said, yes." Id. at 230. Counsel testified that Rover told her about the jailhouse conversation with Petitioner. Id. at 238-39.

Petitioner offered a different version of events. He admitted that Rover met him at the jail but denied that she showed him any judgments. Id. at 249. According to Petitioner, Rover merely told him that the prosecution was "using a felony out of . . . Florida and something out of North Carolina." Id. Rover then asked if he had "ever been to prison in North Carolina before and [he] said yes." Id. Petitioner testified that he did not "have" a 2010 North Carolina conviction for felony larceny. Id. at 250. Instead, he claimed that his "last conviction in North Carolina was in 2008 . . . for possession of cocaine." Id. At the hearing, however, Petitioner was confronted with a copy of the North Carolina judgment for felony larceny. Id. at 260-61. He acknowledged that, although it lacked

10

fingerprints, the judgment contained his name, date of birth, and Social Security number.[3] Id. at 261.

After the hearing, the postconviction court held that Petitioner's ineffective-assistance claim was "without merit." Id. at 141. The court found that counsel and Rover were "more credible than" Petitioner based on their "demeanors." Id. According to the court, Petitioner "was presented with the North Carolina judgment [at the jail and] confirmed it was his conviction." Id. Thus, "there was no reason for counsel to question that it was not [him]." Id. The court acknowledged that the judgment lacked a "fingerprint card." Id. But it noted that the judgment contained Petitioner's "full name, date of birth, and Social Security number, which [was] sufficient identifying information for a judgment to be used to prove a qualifying offense." Id. at 141-42. Given "the totality of the circumstances," the court held that counsel was not deficient for "conclud[ing] and advis[ing] [Petitioner] that he met the qualifications for an HFO designation." Id. at 142.

This ruling was reasonable. Strickland requires courts to "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." 466 U.S. at 689. "Even if counsel's decision appears to have been unwise in retrospect, the decision will be held to have been

---

[3] The record includes a copy of the North Carolina judgment. Doc. 8-2 at 59-61. It contains Petitioner's name, date of birth, and Social Security number. Id.

ineffective assistance only if it was so patently unreasonable that no competent attorney would have chosen it." Dingle v. Sec'y for Dep't of Corr., 480 F.3d 1092, 1099 (11th Cir. 2007). Moreover, because the postconviction court rejected Petitioner's claim on the merits, he cannot prevail unless he shows that "no reasonable jurist could find that his counsel's performance fell within the wide range of reasonable professional conduct." Franks v. GDCP Warden, 975 F.3d 1165, 1176 (11th Cir. 2020).

Petitioner cannot overcome the "doubly deferential" standard of review required by Strickland and AEDPA. Cullen v. Pinholster, 563 U.S. 170, 190 (2011). His claim turned on a credibility determination. At the evidentiary hearing, Petitioner testified that Rover never confirmed the North Carolina conviction was his. Doc. 8-12 at 249. But the postconviction court declined to credit this testimony. Instead, it deemed "credible" Rover's testimony that Petitioner "was presented with the North Carolina judgment" and "confirmed it was his conviction." Id. at 141. "Determining the credibility of witnesses is the province and function of the state courts, not a federal court engaging in habeas review." Consalvo v. Sec'y for Dep't of Corr., 664 F.3d 842, 845 (11th Cir. 2011). Petitioner has not shown by "clear and convincing evidence" that the court's credibility determination was erroneous. 28 U.S.C. § 2254(e)(1). Thus, he cannot overcome the "presumption of correctness" afforded that determination. Consalvo, 664 F.3d at 845.

12

Based on the postconviction court's reasonable determination of the facts, counsel's performance was not deficient. Because Petitioner confirmed that the North Carolina conviction was his—and because the judgment contained Petitioner's name, date of birth, and Social Security number—counsel had no reason to doubt that the conviction belonged to Petitioner. Therefore, the postconviction court reasonably concluded that counsel was not ineffective for stipulating to HFO sentencing. See Franks, 975 F.3d at 1176 (to prevail on Strickland claim under AEDPA, petitioner must show that "no reasonable jurist could find that his counsel's performance fell within the wide range of reasonable professional conduct").

**B. Ground Two**

Petitioner was charged with—and convicted of—two counts of possession of a firearm by a felon. Doc. 8-1 at 25, 59; Doc. 8-2 at 25, 64. The first count related to the hit and run, and the second concerned the attempted armed robbery. Doc. 8-1 at 25; Doc. 8-2 at 25. According to Petitioner, counsel should have informed him that double jeopardy barred his dual convictions for possession of a firearm by a felon. Doc. 1 at 7. Petitioner argues that double jeopardy applied because he continuously possessed the firearm "on the same day," and the two incidents occurred "only minutes apart." Id. Had Petitioner known that his dual convictions were "legally invalid," he allegedly would not have pleaded guilty. Doc. 8-12 at 28.

13

Even under de novo review, this claim fails for lack of prejudice. To show prejudice in the plea context, a petitioner must establish "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59. The "strong societal interest in finality has special force with respect to convictions based on guilty pleas." Lee v. United States, 582 U.S. 357, 368-69 (2017). Thus, "[c]ourts should not upset a plea solely because of post hoc assertions from [the petitioner] about how he would have pleaded but for his attorney's deficiencies." Id. at 369. Instead, the petitioner must "convince the court that a decision to reject [a] plea [] would have been rational under the circumstances." Diveroli v. United States, 803 F.3d 1258, 1265 (11th Cir. 2015).

Even assuming counsel was deficient for failing to raise the double-jeopardy issue, Petitioner cannot show prejudice.[4] A successful double-jeopardy challenge would have resulted in the dismissal of one felon-in-possession count. But Petitioner still would have faced a statutory maximum of thirty years' imprisonment for the other felon-in-possession count, along with a separate

---

[4] Some Florida appellate decisions hold that "felonious possession of a firearm is a continuing crime," and thus "each period of uninterrupted possession of the same firearm, regardless of length, is punishable only once." Rogers v. State, 113 So. 3d 960, 961 (Fla. 2d DCA 2013); see also Syder v. State, 921 So. 2d 871, 873 (Fla. 4th DCA 2006) (same). Under this line of authority, Petitioner's dual convictions for possession of a firearm by a felon would likely violate double jeopardy. But even if the double-jeopardy argument had merit, Petitioner cannot show prejudice for the reasons explained below.

14

statutory maximum of thirty years' imprisonment for attempted armed robbery. Doc. 8-1 at 57; Doc. 8-2 at 62; see also Munden, 426 So. 3d at 501; Betty, 7 So. 3d at 587. Thus, Petitioner—who was forty-two years old at the time of sentencing—could have received a total sentence of sixty years' imprisonment had he gone to trial and lost. Instead, he pleaded guilty and received an agreed-upon sentence of fifteen years' imprisonment. Doc. 8-1 at 44-45, 59; Doc. 8-2 at 41-42, 64, 151. Given the significant reduction in sentencing exposure, Petitioner cannot show that a "rational person would have rejected [the] plea bargain." United States v. Miranda-Alfaro, 462 F. App'x 935, 937 (11th Cir. 2012) (finding no Strickland prejudice where "plea bargain lowered [defendant's] sentence of imprisonment by eight years").

Moreover, Petitioner offers no viable defense to any of the charges. Doc. 1; Doc. 11. One way "to evaluate whether there is a reasonable probability a petitioner would have insisted on going to trial is to determine whether petitioner had available a defense that would likely have borne fruit at trial." Singleton v. Sec'y Dep't of Corr., No. 8:07-cv-1419-VMC-MAP, 2009 WL 975783, at *4 (M.D. Fla. Apr. 9, 2009). Because Petitioner offers no defense to the charges—and because his guilty plea allowed him to avoid the possibility of spending the rest of his life in prison—Petitioner fails to show a "reasonable probability" that he "would have insisted on going to trial" had counsel raised a double-jeopardy challenge. Hill, 474 U.S. at 59; see also Sierra v. Fla. Dep't of

15

Corr., 657 F. App'x 849, 852 (11th Cir. 2016) (holding that, because petitioner had "no valid defenses, it would not have been rational . . . to have rejected the plea agreement and proceeded to trial").

Accordingly, it is

**ORDERED**:

1.      The Petition (Doc. 1) is **DENIED**, and this case is **DISMISSED with prejudice**.

2.      If Petitioner appeals, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.[5]

3.      The **Clerk** shall enter judgment dismissing this case with prejudice, terminate any pending motions, and close the file.

---

[5] The Court should issue a certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Here, after consideration of the record as a whole, the Court will deny a certificate of appealability.

**DONE AND ORDERED** at Jacksonville, Florida, this 22nd day of April,

2026.



TIMOTHY J. CORRIGAN
Senior United States District Judge

TpaP-2
c:
Larry C. Goodman, #801071
Counsel of Record

17